UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

____

TIEQUAN RILEY,

          Plaintiff,

v.

UNKNOWN NYQUIST et al.,

          Defendants.
_____/

Case No. 2:25-cv-89

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff's motion (ECF No. 2) for leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Hopala, Skinner, Tentaman, Smith, Nurkala, Prison Counselor Wilson, Kristoff, Corrigan, Jeffrey, LeFevour, Corrections Officer Wilson, and Kowalski. Plaintiff's Eighth Amendment claim against Defendant Nyquist remains in the case.

**Discussion**

I. **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Defendants Nurse Practitioners Unknown Nyquist and Unknown LeFevour, Registered Nurses Unknown Hopala, Unknown Skinner, Unknown Tentaman, and Unknown Smith, Resident Unit Manager Unknown Nurkala, Prison Counselors Unknown Wilson and Unknown Kowalski, Corrections Officers Unknown Kristoff and Unknown Wilson, Health Unit Supervisor Elizabeth Corrigan, and Health Unit Manager Aaron Jeffrey in their official and personal capacities. (ECF No. 1, PageID.2–3.)

Plaintiff alleges that when Defendant Hopala was passing out medications on September 20, 2024, Plaintiff discovered that his pain medications had run out only days after he had major surgery. (*Id.*, PageID.4.) Plaintiff complained to Defendant Hopala, and she told him to kite health care. (*Id.*) Plaintiff spoke to Defendant Skinner while she was passing medications, and she stated that he did not deserve surgery because he was a prisoner. (*Id.*) However, after Plaintiff filed a grievance Defendant Skinner tried to help Plaintiff get his expired medical detail. (*Id.*) Defendant Tentaman acknowledged the way Plaintiff was being treated was wrong but said she could not do anything to help him. (*Id.*)

Plaintiff states that Defendant Nyquist refused to see him between September 17, 2024, and October 14, 2024. (*Id.*) Defendant Nyquist only agreed to see Plaintiff on October 14, 2024, after RN Duquette (not a Defendant) saw Plaintiff and noticed that all of his appointments had been cancelled. (*Id.*) Plaintiff states that he had asked Defendants Smith and Nurkala to contact health care on his behalf, but they stated that Plaintiff had "nothing coming" and "should not be here." (*Id.*)

Plaintiff alleges that when he asked Defendant Prison Counselor Wilson to contact health care, Defendant Prison Counselor Wilson said he would make some calls, but nothing ever came from the calls. Plaintiff states that on another occasion, Defendant Corrections Officer Wilson agreed to contact health care, but states that no one ever listens to Defendant Corrections Officer Wilson, so he was not able to get Plaintiff help. (*Id.*). Plaintiff attempted to stop Defendant Kowalski, but she kept walking and merely asked what Plaintiff wanted her to do. (*Id.*) When Plaintiff asked Defendant Kristoff to get help because he needed medical attention, Defendant Kristoff stated, "I don't give a f**k [racial slur] and take the paper out of your window before I write you a ticket." (*Id.* (asterisks added).) Plaintiff asserts that Defendants Corrigan, Jeffrey, and LaFevour failed to rectify the situation and aided in the cover-up. (*Id.*, PageID.5.)

Plaintiff attaches copies of grievances and grievance responses to his complaint as exhibits. On October 3, 2024, Plaintiff filed a step I grievance asserting:

> I had a major surgery on my spine last month on 9/16/24. I let the staff know that I need to be seen an[d] provided meds because I'm suffering complications, severe back spasms and pain. I'm being ignored by the provider Nyquist as well as the other male provider LaFevour.

(ECF No. 1-1, PageID.10.)

The step I response by Defendant Corrigan indicated that a review of Plaintiff's electronic medical record had been conducted and noted that on October 3, 2024, Plaintiff had submitted a health service request complaining of back spasms, cramps, and pain. On October 7, 2024, the nurse assessed Plaintiff and scheduled a follow-up with the medical provider. On October 14, 2024, the medical provider assessed Plaintiff and prescribed a muscle relaxer and laxative to address Plaintiff's symptoms. Plaintiff was provided with education and told to kite if needed for follow-up. (ECF No. 1-4, PageID.13.) Defendant Corrigan noted that Plaintiff had requested health services and was seen by both nursing and the medical provider. Defendant Corrigan concluded

3

that Plaintiff had presented no evidence to substantiate his claim. (*Id.*) Defendant Jeffrey reviewed the response. (*Id.*)

Plaintiff filed a step II appeal, and the response indicates that his issue was appropriately addressed at Step I. (ECF No 1-3, PageID.12.) The respondent further stated:

> Review of the prisoner health record reveals that grievant underwent a C5–7 posterior spinal fusion on 9/16.2024; he returned to AMF on 9/17/2024. Grievant was seen by an on-site provider upon his return; a narcotic analgesic and a muscle relaxer were ordered. The orders for both medications were renewed on 9/25/2024. On 10/3/2024, a request (kite) was received from grievant re: back spasms and pain. He was evaluated by nursing staff on 10/7/2024 re: same. The nurse ordered a provider chart review re: grievant's request for continuation of the muscle relaxer. This review was addressed at an in-person provider visit conducted on 10/14/2024. The provider reordered the muscle relaxer at that time; it was subsequently reordered again on 10/24/2024 and 11/26/2024. Grievant continues to be followed by on-site and off-site providers re: his surgery.

(*Id.*)

On October 17. 2024, Plaintiff filed another grievance stating that he had been denied adequate medical care by Defendants Nyquist, LeFevour, Hopala, Skinner, and Tentaman, as well as by health care supervisors. (ECF No. 1-9, PageID.18.) Plaintiff's grievance was rejected as containing extraneous information and multiple issues. (*Id.*) Plaintiff's appeal of the rejection was denied at steps II and III. (ECF Nos. 1-11, 1-12, and 1-13.)

Plaintiff states that he is seeking to be awarded $150,000 in damages for the extreme negligence he experienced. (ECF No. 1-1, PageID.6) Plaintiff also seeks $150,000 for pain and suffering in accordance with the "Deliberate Indifference Standard." (*Id.*) Plaintiff also seeks to have Defendants Skinner, Hopala, Nyquist, LaFevour, Kristoff, Jeffrey, and Corrigan fired from their jobs.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

4

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Eighth Amendment

Plaintiff claims that Defendants were deliberately indifferent to his back pain. The Court construes this as asserting an Eighth Amendment violation. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical

6

attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150

8

F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

The step II grievance response by Patricia Lamb (not a Defendant) indicates that Plaintiff had surgery on his spine on September 16, 2024, and was prescribed a narcotic analgesic and a muscle relaxer. (ECF No. 1-3, PageID.12.) Plaintiff claims that his medications ran out on September 20, 2024, and he complained to Defendant Hopala, who told him to kite health care. (ECF No. 1, PageID.4.) The step II response by RN Lamb states that a review of Plaintiff's health record indicated that the medications were renewed five days later, on September 25, 2024. (*Id.*) Plaintiff kited to request continued medication for back pain and spasms on October 3, 2024. (*Id.*) On October 7, 2024, Plaintiff was evaluated by unspecified nursing staff, who ordered a provider chart review to address Plaintiff's request for continuation of his muscle relaxer. (*Id.*) Plaintiff was seen by the provider the following week, on October 14, 2024, and his muscle relaxer was reordered. (*Id.*) The medication was subsequently reordered on October 24, 2024, and again on November 26, 2024. (*Id.*)

Based on Plaintiff's complaint and the attachments thereto, it appears that he was without medication for his back spasms and pain for a period of five days from September 20, 2024, until September 25, 2024, and again for a period of eleven days from October 3, 2024, until October 14, 2024. Assuming, without deciding, that the denial of medication during these time periods is

9

sufficiently serious to constitute an Eighth Amendment violation, the Court must examine the conduct of each Defendant to determine if they acted with deliberate indifference in violation of the Eighth Amendment.

### 1. Defendant Hopala

With regard to Defendant Hopala, Plaintiff states that after he discovered that his medication had expired, Defendant Hopala told him to kite healthcare. (ECF No. 1, PageID.4.) Plaintiff later filed a grievance on Defendant Hopala and other Defendants on October 17, 2024, but fails to allege any specific facts describing Defendant Hopala's conduct. (ECF No. 1-9.) Based on the allegations in Plaintiff's complaint, Defendant Hopala did nothing more than advise Plaintiff to file a kite. Such conduct does not show that Defendant Hopala was deliberately indifferent to a serious medical need. Therefore, Plaintiff's claim against Defendant Hopala is properly dismissed.

### 2. Defendant Skinner

Plaintiff claims that Defendant Skinner stated that he did not deserve surgery because he was a prisoner. (ECF No. 1, PageID.4.) In an attachment to a step II grievance appeal dated October 14, 2024, Plaintiff alleges that he spoke with Defendant Skinner on September 20, 2025, and that she asked how he was doing. Plaintiff responded, "not too good." (ECF No. 1-13.) Defendant Skinner stated that she did not know why Plaintiff had been given surgery because he was in prison and did not deserve it. (*Id.*) Defendant Skinner then handed Plaintiff a special accommodation for extra pillows and blankets and use of a phone in his cell, which was dated October 15, 2024. Plaintiff states that the accommodation was supposed to have been issued on September 17, 2024, after he got out of the hospital. (*Id.*) Plaintiff states that he had already been forced to walk outside to use the phone to speak to his family and that he was not given the extra pillows and blankets. (*Id.*) In his complaint, Plaintiff alleges that after he filed a grievance, Defendant Skinner tried to

10

help Plaintiff get his expired medical detail. (ECF No. 1, PageID.4.) Although Plaintiff asserts that Defendant Skinner told him that he did not deserve surgery because he was a prisoner, Plaintiff fails to allege any facts showing that Defendant Skinner took any action to deprive Plaintiff of his medications or that she actively interfered with his ability to obtain his medications. Nor does Plaintiff allege that Defendant Skinner was responsible for the late issuance of his accommodation for extra pillows and blankets and use of a phone in his cell. Mere allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam). Therefore, the Court concludes that Plaintiff's Eighth Amendment claim against Defendant Skinner is properly dismissed.

### 3. Defendant Tentaman

In his complaint, Plaintiff states that Defendant Tentaman acknowledged that the way Plaintiff was being treated was wrong but said she could not do anything to help him. (*Id.*) In the attachment to Plaintiff's step II grievance, Plaintiff states that Defendant Tentaman told Plaintiff it was not her job to make sure he had medications, that was up to the medical provider, and that she only passed out medications. (ECF No. 1-13.) Plaintiff does not allege that Defendant Tentaman took any action to prevent him from accessing health care or actively interfered with his ability to obtain his medications. Therefore, Plaintiff's Eighth Amendment claim against Defendant Tentaman is properly dismissed.

### 4. Defendant Nyquist

Plaintiff asserts that Defendant Nyquist refused to see him between September 17, 2024, and October 14, 2024, and only agreed to see him after a non-Defendant RN noticed that all of Plaintiff's appointments had been cancelled. (ECF No. 1, PageID.4.) Plaintiff asserts that he ran out of pain medication during this period, beginning on September 20, 2024. (*Id.*) As noted above,

11

Plaintiff did not receive pain medication until October 14, 2024. (*Id.*; ECF No. 104, PageID.13.) Further, as noted above, Plaintiff appears to have been without medication for his back spasms and pain for a period of five days from September 20, 2024, until September 25, 2024, and again for a period of eleven days from October 3, 2024, until October 14, 2024, at which point Defendant Nyquist again prescribed a muscle relaxant for Plaintiff's back. (ECF No 1-3, PageID.12.) In addition, Plaintiff alleges that Defendant Nyquist only agreed to see him on October 14, 2024, after RN Duquette, who is not a defendant in this case, noticed that all of Plaintiff's appointments had been cancelled and intervened on Plaintiff's behalf. (ECF No. 1, PageID.4.) The Court concludes that although Plaintiff has by no means proven that Defendant Nyquist acted with deliberate indifference in this case, Plaintiff has alleged sufficient facts to avoid dismissal of his Eighth Amendment claim against Defendant Nyquist at this early stage of the proceedings.

### 5. Defendants Smith, Nurkala, Prison Counselor Wilson, Corrections Officer Wilson, Kowalski, and Kristoff

Plaintiff alleges that between September 20, 2024, and September 25, 2024, he asked several non-medical prison employees to help him by contacting health care on his behalf. (ECF No. 1, PageID.4.) Plaintiff asserts that when he spoke to Defendant Smith, Defendant Smith told Plaintiff that he had "nothing coming." (*Id.*) When Plaintiff asked Defendant Nurkala to contact health care she responded that Plaintiff should not be there, and that when he attempted to stop Defendant Kowalski, she kept walking and merely asked what Plaintiff wanted her to do. (*Id.*) The Court notes that while Plaintiff alleges that Defendants Nurkala, Smith, and Kowalski refused to contact health care, he does not allege that they prevented him from doing so on his own or that he was unable to contact health care without their assistance. Moreover, Plaintiff does not allege that he had an obvious need for immediate medical attention such that a non-medical employee would be put on notice that Plaintiff needed to be seen by health care.

12

Plaintiff asserts that when he spoke to Defendant Kristoff, Defendant Kristoff called Plaintiff a racial slur and told him to take the paper out of his window before he wrote a ticket on Plaintiff. (*Id.*) As with Defendants Nurkala, Smith, and Kowalski, Plaintiff fails to allege that Defendant Kristoff prevented him from contacting health care or that he was unable to do so without Defendant Kristoff's assistance, or that Plaintiff had an obvious serious medical need at the time he attempted to speak to Defendant Kristoff.

Moreover, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985).

Plaintiff alleges that when he asked Defendant Prison Counselor Wilson to contact health care, Defendant Prison Counselor Wilson said he would make some calls, but nothing ever came from the calls. Plaintiff states that on another occasion, Defendant Corrections Officer Wilson agreed to contact health care, but states that no one ever listens to Defendant Corrections Officer Wilson, so he was not able to get Plaintiff help. (ECF No. 1, PageID.4.) Based on Plaintiff's allegations, it appears that both Prison Counselor Wilson and Corrections Officer Wilson attempted to assist Plaintiff but were ignored by health care. Such allegations do not support a finding of deliberate indifference on the part of Defendants Prison Counselor Wilson and Corrections Officer Wilson.

Because Plaintiff fails to allege any facts showing that non-medical Defendants Smith, Nurkala, Kowalski, Prison Counselor Wilson, Corrections Officer Wilson, and Kristoff took any

13

action which prevented him from contacting health care or that they were responsible for the cancellation of his pain medication and the delay in obtaining a new prescription, his Eighth Amendment claims against these Defendants are properly dismissed.

### 6. Defendant LeFevour

In his October 3, 2024, step I grievance, Plaintiff made a conclusory assertion that Defendant LeFevour "ignored" him. (ECF No. 1-1, PageID.10.) Plaintiff also asserts that Defendant LaFevour failed to "rectify" the situation and helped cover it up. (ECF No. 1, PageID.5.) However, Plaintiff fails to allege any specific facts in support of these assertions. While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555. The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.*, 550 U.S. at 570. The court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, Plaintiff fails to state a claim against Defendant LeFevour.

### 7. Defendants Corrigan and Jeffrey

In Plaintiff's complaint, Plaintiff's only allegations against Defendants Corrigan and Jeffrey are that they failed to correct the situation and aided in a cover-up. (ECF No. 1, PageID.5.) A review of the attachments to Plaintiff's complaint shows that Defendants Corrigan and Jeffrey responded to his grievances. (ECF No. 1-4, PageID.13.)

14

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips*, 534 F.3d at 543); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Corrigan and Jeffrey encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the underlying misconduct. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 claims against Defendants Corrigan and Jeffrey are premised on nothing more than respondeat superior liability, he fails to state a claim against them.

### B. Equal Protection against Defendant Kristoff

Plaintiff alleges that Defendant Kristoff used a racial slur against him, stating "I don't give a f**k [racial slur] and take the paper out of your window before I write you a ticket." (ECF No. 1, PageID.4 (asterisks added).)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). The use of racial slurs, standing alone, does not violate the Fourteenth Amendment's guarantee of equal protection. *King v. City of Eastpointe*, 86 F. App'x 790, 814 (6th Cir. 2003).

16

In his complaint, Plaintiff alleges that he "tried to stop" Defendant Kristoff as he walked by Plaintiff's cell, and Defendant Kristoff responded with a racial slur and an instruction to Plaintiff that if he did not take the paper out of his cell window, Defendant Kristoff would write him a ticket. (ECF No. 1, PageID.4.) As noted above, Plaintiff does not allege that Defendant Kristoff prevented him from filing a healthcare kite. Moreover, Plaintiff does not allege that he had an obvious need for immediate medical attention. As noted above, Defendant Kristoff was employed as a Corrections Officer during the pertinent time period and did not have any medical expertise. Plaintiff's equal protection claims are wholly conclusory, and he has alleged insufficient facts to plausibly suggest that his equal protection rights were violated. The Court concludes that Plaintiff fails to allege sufficient factual allegations against Defendant Kristoff to support an equal protection claim against him.

## **Conclusion**

The Court will grant Plaintiff's motion (ECF No. 2) for leave to proceed *in forma pauperis*. Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Hopala, Skinner, Tentaman, Smith, Nurkala, Prison Counselor Wilson, Kristoff, Corrigan, Jeffrey, LeFevour, Corrections Officer Wilson, and Kowalski will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claim against Defendant Nyquist remains in the case.

An Order consistent with this Opinion will be entered.

Dated:   December 3, 2025                              /s/ Jane M. Beckering
                                                      Jane M. Beckering
                                                      United States District Judge